**The below described is SIGNED.**



**Dated: March 31, 2015**

                                      **R. KIMBALL MOSIER**
                                      **U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Scott Joseph Withers and<br>Melanie Dawn Withers,<br><br>               Debtors. | Bankruptcy Number: 11-28113<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Scott Joseph Withers and<br>Melanie Dawn Withers,<br><br>               Plaintiffs,<br><br>v.<br><br>Utah Sheet Metal Worker's Trust Funds,<br><br>             Defendant. | Adversary Proceeding No. 13-2096 |

**FINDINGS AND CONCLUSIONS IN SUPPORT OF DECLARATORY JUDGMENT
THAT DEFENDANT HAD NOTICE OR ACTUAL KNOWLEDGE OF THE DEBTORS'
BANKRUPTCY CASE IN TIME TO TIMELY FILE A PROOF OF CLAIM**

The plaintiffs in this adversary proceeding, Scott Joseph Withers and Melanie Dawn

Withers (Debtors) seek a judgment from this Court declaring that the Debtors have been

discharged of any debt owed by them to the Defendant, Utah Sheet Metal Trust Funds (Trust)

because the Trust had notice or actual knowledge of the Debtors' case in time for the Trust to

timely file a proof of claim. The trial of this adversary proceeding commenced on December 11, 2014 and was continued to December 15, 2014. The Debtors were represented by Jory L. Trease, of Jory L. Trease, Esq., Inc., and the Trust was represented by Kenneth B. Grimes. After considering the evidence, including the facts as stipulated to or admitted by the parties, or as adduced from testimony, or as established by the introduction of exhibits, and after assessing the credibility of the witnesses, and considering the arguments of counsel, and conducting an independent review of the law, the Court makes the following findings of fact and conclusions of law.[1]

## I. JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(a) and (b) and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and the Court may enter a final Order. Venue is appropriate under 28 U.S.C. § 1409.

## II. FACTS

The Debtors were members of, and ran a business known as S&W Sheet Metal, LLC (S&W). S&W had conducted business with the Utah Sheet Metal Workers and was the subject of a payroll audit (Payroll Audit) by the Trust to determine the amount of past due employee

---

[1] These Findings of Fact and Conclusions of Law constitute the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052, and incorporate by reference any oral rulings made on the record during the hearing. Any of the findings of fact herein are also deemed, to the extent appropriate, to be conclusions of law and conclusions of law herein are similarly deemed to be findings of fact and shall be equally binding as both.

2

benefit plan contributions, if any, that were owed to the Trust. The Trust contracted with the accounting firm of Robison, Hill & Co. (Robison), to perform the Payroll Audit of S&W. The Payroll Audit was commenced in March 2011.

The Debtors filed a Chapter 7 bankruptcy petition on June 2, 2011. The Debtors were advised by their bankruptcy attorney to provide the bankruptcy case number and the name and telephone number of their bankruptcy attorney to any creditor who contacted them after their bankruptcy was commenced.

In late June 2011, Natalie Nelson (Nelson), an auditor employed by Robison, telephoned Scott Joseph Withers (Withers) in an effort to obtain additional information for the Payroll Audit (Nelson Telephone Call). During the Nelson Telephone Call, Withers advised Nelson that he and his wife had filed personal bankruptcy. Nelson advised Barry D. Loveless (Loveless), another accountant employed by Robison, of the Nelson Telephone Call, and Loveless responded by sending an email to Kenneth B. Grimes (Grimes), who served as the attorney for the Trust at all times relevant to this dispute. The email message read: "Hi Ken, we have run into a small issue on the S&W Sheet Metal payroll audit. I would like to set a time to conference call with you, me and Natalie of my office to discuss the issue and how to proceed." After refreshing his memory by referring to a document titled "MEMO: S&W SHEET METAL, LLC PAYROLL AUDIT," Loveless testified that "we were informed by the employer, or by the employer's attorney that the employer filed bankruptcy." On June 22, 2011, Grimes, Loveless, and Nelson conducted a telephone conference call. Grimes's billing statement for June 22, 2011 states in part that "Scott Withers refuses to provide any further information and says that they are filing bankruptcy."

3

Grimes acknowledged that he was familiar with the United States Bankruptcy Court, his office had access to the Electronic Case Filing System (ECF), his staff knew how to look up debtor information on ECF and they knew how to file proofs of claim. Grimes did nothing to verify whether the Debtors had filed bankruptcy. On or about July 26, 2011, Robison completed the Payroll Audit which culminated with an audit report that estimated S&W's underpaid employee benefit plan contributions to be $33,220.79.

The Debtors received their discharge on September 21, 2011. Even though Grimes had been notified that "they", meaning the Debtors or S&W, are filing bankruptcy, he commenced a lawsuit against both the Debtors and S&W. On September 24, 2011, Grimes caused the Debtors and S&W to be served with a summons and complaint in the United States District Court for the District of Utah, asserting that the Debtors were personally liability to the Trust for underpaid employee benefit plan contributions.

On or about October 13, 2011, Withers made a telephone call to Grimes (Grimes Telephone Call). During the Grimes Telephone Call, it is undisputed that Withers informed Grimes that he that he had no money, was working for $20.00 an hour, and offered to pay $2,500.00 in an effort to settle the Trust's claims. There is conflicting evidence with respect to the remainder of the Grimes Telephone Call. According to Withers, he told Grimes of the Debtors' personal bankruptcy, and offered to provide Grimes with the Debtors' bankruptcy case number and the name of their bankruptcy attorney. Withers testified that in response to his offer, Grimes told him that it was not necessary for Withers to provide him with the Debtors' bankruptcy case number or the name of the Debtors' bankruptcy attorney at this time.

At trial during direct examination, Grimes was asked to read from his billing notes of October 13, 2011. The transcript of his testimony reads as follows:

> It says "TCF" - - which is my shorthand for "telephone call from" - - "Scott Withers. He wants to resolve his case. He says he is working for Rocky Mountain Mechanical for $20 an hour and has no money. He proposed $2,500 payment in settlement. Says he talked to a lawyer and it will cost that much to defend. The Ironwood address is no good. His address now is 4382 Bouck - - that's B-O-U-C-K - - "Circle, West Valley, 84120. E-mail is scottsmetal@aol.com," no capitals. "Scott says that he made an $8,000 payment he does not believe was credited." I say "I will check on that." (Trial Tr. Vol. 1, 42-43, Dec 11, 2014).

When Grimes was asked if that was all that was discussed, Grimes testified that: "I don't specifically recall the telephone call. My notes indicate what was discussed, so I have no reason to believe there was anything else of significance discussed."(Id. at 45). When asked about how much time passed between the time of the telephone call and the time that Grimes prepared his billing notes, Grimes testified: "Probably a matter of minutes, certainly no less than a day - - or no more than a day." (Id. at 47). Grimes did not recall the time of day when the Grimes Telephone Call took place. (Id. at 47).

The Court finds the Wither's account of the Grimes Telephone Call to be the more credible evidence. Withers had many reasons to disclose the existence of the Debtors' bankruptcy filing during the Grimes Telephone Call. He had been instructed by his bankruptcy attorney to provide any creditor that contacted him with the Debtors' bankruptcy case number and the name and telephone number of their bankruptcy attorney. Withers and his wife had just been sued by the Trust in federal district court, and Grimes represented the Trust who was the plaintiff in the lawsuit. Withers had previously disclosed his bankruptcy to the Trust's payroll auditor, Robison. The Court finds it doubtful that Withers would go to the effort to call Grimes and inform Grimes that he had no money, was working for $20.00/hr and attempt to settle a

5

$33,000 lawsuit with an offer of $2,500, without mentioning his bankruptcy and using it as a bargaining chip to encourage the Trust to settle for such a small amount. Withers had every reason to tell Grimes he had filed bankruptcy and had no reason to keep it a secret. Withers had a specific recollection of the Grimes Telephone Call and Grimes had no specific recollection. The Court finds that Withers told Grimes that the Debtors had filed bankruptcy and offered to give Grimes the Debtors' bankruptcy case number and the name and telephone number of their bankruptcy attorney during the Grimes Telephone Call. Following the Grimes Telephone Call, Grimes did nothing to verify whether the Debtors had filed bankruptcy.

During the course of the Debtors' bankruptcy case, the Chapter 7 Trustee liquidated assets in the total amount of $3,259.07. All of the liquidated assets were used to pay the Trustee's administrative expenses. The Clerk's Notice of Assets and Deadline To File Proofs of Claim, which set a deadline of December 28, 2011, was mailed to creditors on September 29, 2011. Because the Debtors did not list the Trust as a creditor in their list of creditors or bankruptcy schedules, the Trust did not receive written notice of the Debtors' bankruptcy petition and did not receive a copy of the Clerk's Notice for Creditors to File Claims. As a result, the Trust asserts that its debt is excepted from the Debtors' discharge under 11 U.S.C. § 523(a)(3). Although the Trust did not received the Clerks Notice of Deadline To File Proofs of Claim, the deadline to file proofs of claim was 76 days after the Grimes Telephone Call.

On March 12, 2013, the Debtors commenced this adversary proceeding seeking a judgment declaring that they have been discharged of any debt asserted against them by the Trust. On September 16, 2014, the Court entered a pretrial order which, among other things, bifurcated the issues for trial and ordered that the sole issue to be tried at the scheduled trial was

6

the determination of when the Trust first had notice or actual knowledge of the Debtors'

bankruptcy case. All other issues in the case were reserved for future determination.

### III. CONCLUSIONS OF LAW

The dispute centers on the application of 11 U.S.C. § 523(a)(3)(A).[2] The Debtors

contend that the Trust had notice or actual knowledge of the Debtors' bankruptcy case in time to

permit the Trust to timely file a proof of claim. The Trust argues that any notice it received was

inadequate and that it lacked sufficient actual knowledge of the Debtors' bankruptcy case to file

a timely proof of claim. Section 523(a)(3)(A), provides in part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title
> does not discharge an individual debtor from any debt–
>
> ...
>
> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the
> name, if known to the debtor, of the creditor to whom such debt is owed, in time
> to permit–
>
> (A) ... timely filing of a proof of claim, unless such creditor had notice or actual
> knowledge of the case in time for such timely filing.

Bankruptcy courts are instructed that "[t]he Bankruptcy Code must be construed liberally

in favor of the debtor and strictly against the creditor."[3] This is particularly true with respect to

statutes that except a debt from a debtor's discharge. "[E]xceptions to discharge are to be

---

[2] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

[3] *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689. 694 (10th Cir. 2014) (citation and internal quotation marks omitted).

narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor."[4]

The Debtors argue that the Trust was given notice of their bankruptcy case in two different ways: 1) the Nelson Telephone Call of June 22, 2011 and, 2) the Grimes Telephone Call of October 13, 2011. The Nelson Telephone Call triggered a cascade of events. Shortly after the call, Nelson advised Loveless of the Nelson Telephone Call. In response, Loveless sent Grimes an email concerning the Nelson Telephone Call, which in turn triggered a telephone conference call involving Nelson, Loveless, and Grimes. Loveless testified that the Debtors or the Debtors' attorney provided Robison with notice that the employer filed for bankruptcy. Grimes's detailed billing record from June 22, 2011 contains an entry that "Scott Withers refuses to provide any further information and says that they are filing bankruptcy." During the Grimes Telephone Call, Withers told Grimes that the Debtors had filed bankruptcy and that Grimes was offered the bankruptcy case number and the name and telephone number of the Debtors' bankruptcy attorney.

The debt of a creditor that had notice or actual knowledge of a bankruptcy case in time to file a timely proof of claim will be discharged notwithstanding the failure of the creditor to receive formal notice. "[B]ecause of the specific language of § 523(a)(3)(A) allowing discharge of the debt of a creditor with actual, timely notice, a Chapter 7 creditor holding an unsecured claim does *not* have the 'right to assume' receipt of further notice."[5] "Standing on the formality

---

[4]*Bellco First Federal Credit Union, v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997) (citations omitted).

[5] *Yukon Self Storage Fund v. Green (In re Green)*, 876 F.2d 854, 857 (10th Cir. 1989) (citing *Olde Cumberlin Auctioneers v. Rider (In re Rider)*, 89 B.R. 137, 140 (Bankr. D. Colo. 1988)).

8

Case 13-02096 Doc 100 Filed 03/31/15 Entered 03/31/15 15:26:18 Desc Main
Document Page 9 of 12

of notice from the court will not excuse a creditor with actual notice of a bar date from its effect. Indeed, a Chapter 7 creditor with such notice has a duty to protect itself from being adversely affected."[6] "Section 523(a)(3)(B) 'explicitly places a burden on creditors with knowledge of bankruptcy proceedings to act to protect their rights.'"[7] Once a creditor obtains knowledge of a bankruptcy proceeding the creditor must affirmatively protect their rights by informing themselves of the applicable deadlines.

> The debtor's duty to afford due process is counterbalanced by the creditors' duty to object to the discharge of a debt if it has *any* notice *or* knowledge o[f] a Chapter 7 case prior to the expiration of the time limitation set forth in Fed. R. Bankr.P. 4007(c). It is well-established in the Tenth Circuit that upon the receipt of notice or knowledge of a Chapter 7 case, creditors must affirmatively protect their rights by informing themselves of applicable deadlines and timely filing complaints to except their claims against the debtor from discharge.[8]

"[W]hen facts are sufficient to put a party on notice he needs to make inquiry or be held to know the facts which such inquiry would have uncovered."[9] "It is well established that 'whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led.'"[10]

---

[6] *Id.* at 857 (citing *Rider*, 89 B.R. at 140 and *Walker v. Wilde (In re Walker)*, 91 B.R. 968, 980 (Bankr. D. Utah 1988)).

[7] *Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1145 (10th Cir. 1991) (quoting *Sanchez Ramos v. Compton (In re Compton)*, 891 F.2d 1180, 1187 (5th Cir. 1990)).

[8]*Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (10th Cir. BAP 2003).

[9]*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1149 n.8 (10th Cir. 2013) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 30 (2001)).

[10] *O'Dea v. Olea*, 217 P.3d 704, 714 (Utah 2009) (quoting *First Am. Title Inc. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 838 (Utah 1998 ).

Withers provided notice of the Debtors' bankruptcy case to Robison, the Trust's auditor. Robison in turn, gave notice of the bankruptcy to Grimes, the Trust's attorney while he acting within the scope of his employment. "Under longstanding Utah law, 'the knowledge of an agent concerning the business which he is transacting for his principal is to be imputed to his principal.'"[11] An attorney-agent's receipt of formal notice prior to the expiration of the discharge objection deadline will be imputed to the agent's principal.[12] "This rule is broad, encompassing *all notice or knowledge* relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority."[13] "'A principal is affected with constructive knowledge, regardless of his actual knowledge, of *all material facts* of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of this authority, although the agent does not in fact inform his principal thereof.'"[14]

The Court concludes that the notice of bankruptcy provided to Grimes by the Nelson Telephone Call was sufficient to satisfy the notice requirements under § 523(a)(3)(A). Grimes was acting as the Trust's agent at all relevant times, and notice of the Debtors' bankruptcy was within the scope of his agency.

---

[11] *Wardley Better Homes & Gardens v. Cannon*, 61 P.3d 1009, 1014 (Utah 2002) (quoting *First Nat'l Bank v. Foote*, 42 P. 205, 207 (1895).

[12] *See*, *Schicke*, 290 B.R. at 801.

[13] *Wardley*, 61 P.3d at 1014 (citation and internal quotation marks omitted).

[14] Id. at 1015 (quoting 3 C.J.S. *Agency* § 432 (1973)).

The Court also concludes that the notice of bankruptcy provided by Withers to Grimes during the Grimes Telephone Call was sufficient to satisfy the notice requirements under § 523(a)(3)(A).

Although the Trust did not received the Clerks Notice of Assets and Deadline To File Proofs of Claim which was mailed to creditors on September 29, 2011, the Trust received actual notice, at least 76 days prior to the claims deadline of December 28, 2011.  The Court concludes that 76 days is sufficient time to permit the timely filing of a proof of claim.

## IV. CONCLUSION

The notice of the Debtors' bankruptcy provided by the Nelson Telephone Call of June 22, 2011, and the notice of the Debtors' bankruptcy provided during the Grimes Telephone Call of October 13, 2011 put the Trust on sufficient notice of the Debtors' bankruptcy in order for the Trust to timely file a proof of claim prior to December 28, 2011.  Accordingly, the Debtors' debt to the Trust has been discharged.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **Findings and Conclusions in Support of Declaratory Judgment, that Defendant Had Notice or Actual Knowledge of the Debtors' Bankruptcy Case in Time to Timely File a Proof of Claim** shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

| | |
|---|---|
| Kenneth B. Grimes | kglawyerslc@yahoo.com, jon@grimeslegalsolutions.com |
| Sheri Throop | sheri@rylegal.com |
| Jory L. Trease | caseinfo.jtbankruptcy@gmail.com, jorytrease@msn.com; janci.jtbankruptcy@gmail.com; myecfemail.jtbankruptcy@gmail.com |